FRIEDMAN & SPRINGWATER LLP
ANDREA T. PORTER (S.B. NO. 095984)
ELLEN A. FRIEDMAN (S.B. NO. 127684)
DANIEL A. NOLAN IV (S.B. NO. 284970)
33 New Montgomery Street, Suite 290
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044
aporter@friedmanspring.com

Attorneys for Mendocino Coast Health Care District

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>MENDOCINO COAST HEALTH CARE DISTRICT, a political subdivision of the State of California,<br><br>Debtor. | Case No. 12-12753<br><br>CHAPTER 9<br><br>**MOTION FOR ORDER AUTHORIZING ASSUMPTION OF EXECUTORY CONTRACTS (BETA RISK MANAGEMENT AUTHORITY AND CALPERS)**<br><br>Date: February 1, 2013<br>Time: 10:00 a.m.<br>Place: 99 South E Street<br>        Santa Rosa, CA<br>Judge: Alan Jaroslovsky |

Mendocino Coast Healthcare District, the above-captioned Chapter 9 debtor (the "District"), seeks an order, pursuant to section 365(a) of the Bankruptcy Code, Rules 6006(a) and (c) of the Federal Rules of Bankruptcy Procedure, and Rule 9014-1 of the Bankruptcy Local Rules for the Northern District of California, authorizing the District to assume certain executory contracts.

**RELIEF REQUESTED**

The District requests authority to assume the following agreements:

1. BETA Risk Management Authority ("BETA")

    a. Healthcare Entity Comprehensive Liability Coverage Contract;

{00652495.DOC v 3}

    b. Health Care Equipment Coverage Contract;

    c. Third Amended Joint Powers Agreement (collectively, the "BETA Agreements"; and

  2. CalPERS Healthcare Coverage Agreement (the "CalPERS Agreement").

Copies of the above BETA Agreements and the CalPERS Agreement (the "Contracts") are attached as Exhibits B and C to the declaration of Wayne C. Allen filed in support of this motion. In support of this motion, the District represents as follows:

## STATEMENT OF FACTS

1.  The District is a public agency that was formed in 1967 under the State of California Local Healthcare District Law for the purpose of constructing a public hospital to serve the people of Mendocino County. The District filed its voluntary petition under Chapter 9 of the United States Bankruptcy Code on October 17, 2012.

2.  The District operates two divisions: the Mendocino Coast District Hospital (the "Hospital") and the Mendocino Coast Home Health & Hospice.

3.  The District encompasses approximately 680 square miles and extends approximately 70 miles south from the Humboldt/Mendocino County line. The Hospital serves an estimated population of 25,000. The closest alternative facility is in Willits, California, a drive of thirty-seven miles that takes about fifty minutes over a rural road which, at times, is impassable. The District employs several hundred people in connection with its operation of the Hospital and the provision of related services.

4.  The health insurance coverage provided under the CalPERS Agreement is critical to the continued wellbeing of the District's employees and the liability coverage provided under the BETA Agreements is critical to the continued operation of the Hospital and provision of related services.

5.  All postpetition payments to BETA and CalPERS on account of the Contracts are current. However, the District owes approximately $35,737 in prepetition arrearages under the BETA Agreements and approximately $214,856 in prepetition arrearages under the CalPERS Agreement. The District proposes to cure the prepetition

defaults by paying four installments: (a) 25% upon entry of an order approving the assumption of the Contracts; (b) 25% upon the effective date of a confirmed plan for the adjustment of debt; and (c) the remaining 50% in two payments within six months after the effective date of a confirmed plan for the adjustment of debt in accordance with the terms of the plan.

      6.      Nothwithstanding the payment schedule set forth above, the District agrees that BETA and CalPERS will have administrative claims in the Chapter 9 case equal to the allowed cure amounts and that the order authorizing assumption of the Contracts will be without prejudice to a subsequent order of the Court requiring accelerated payment of the allowed cure amounts if circumstances warrant the entry of such order.

## DISCUSSION

This motion is made pursuant to sections 365(a) and 904 of the Bankruptcy Code, Rules 6006(a) and (c) of the Federal Rules of Bankruptcy Procedure, and Rule 9014-1 of the Bankruptcy Local Rules for the Northern District of California.

**A.    In General**

Section 365(a) of the Bankruptcy Code provides:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

Under section 365 of the Bankruptcy Code, the assumption of an executory contract is subject to the "business judgment test." In *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943), the Supreme Court stated "[T]he questions whether a lease should be rejected and, if not, on what terms is should be assumed is one of business judgment." *Accord NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the business judgment standard applies to the rejection of executory contracts with the exception of collective bargaining agreements). *See also Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.)*, 476

{00652495.DOC v 3}

3

Case: 12-12753   Doc# 53   Filed: 01/10/13   Entered: 01/10/13 15:18:17   Page 3 of 6

F.3d 665, 670 (9th Cir. 2007) (finding that a court should apply the business judgment rule to a trustee's determination to reject); *Durkin v. Benedor Corp. (In re G.I. Indus.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (finding that bankruptcy courts apply "the business judgment rule to evaluate a trustee's rejection decision.") (citing *Bildisco*, 465 U.S. at 523)); *Orange County Employees Assoc. v. County of Orange (In re County of Orange)*, 179 B.R. 177, 183 (Bankr. C.D. Cal. 1995) (finding *Bildisco* applicable in a Chapter 9 case). The primary issue the court should consider in evaluating whether the debtor appropriately is exercising its business judgment is whether rejection will benefit the general unsecured creditors, s*ee Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 801 (B.A.P. 9th Cir 1982), and courts should defer to the decision of the debtor. *In re Pomona Valley Med. Group*, 476 F.3d at 670 (9th Cir. 2007) (holding that the bankruptcy court should presume the debtor acted prudently and that the debtor's decision to assume or reject should be approved unless the decision is "so manifestly unreasonable that it could not be based on sound business judgment." (quoting *Lubrizol Enters. v. Richmond Metal Finishers*, 756 F.2d 1041, 1047 (4th Cir. 1985) (superseded by statute on other grounds)).

**B. Cure of Defaults**

Section 352(b)(1)(A) of the Bankruptcy Code requires the trustee cure or to provide adequate assurance of the prompt cure of a default. The Code does not define "prompt," but courts agree that whether a proposed cure is "prompt" depends on the facts of each case. *See In re Embers 86th St., Inc.*, 184 B.R. 892, 900 (Bankr. S.D.N.Y. 1995). However, courts generally consider several factors, including the debtor's past financial performance, any inequitable conduct of the counterparty, and the remaining term of the parties' relationship. *See, e.g.*, *In re Uniq Shoes Corp.*, 316 B.R. 748, 751 (Bankr. S.D. Fla. 2004). Courts have found that while extraordinary circumstances could warrant longer cure periods, *see, e.g.*, *In re Coors of N. Miss., Inc.*, 27 B.R. 918, 922 (Bankr. N.D. Miss. 1983) ("the curing of a default within a period of three years may well be a comparatively short period of time as it relates to the prospective longevity of successful business operation."), an assurance to cure a default within a year is likely to be approved. *See, e.g.*, *Gen. Motors*

*Acceptance Corp. v. Lawrence*, 11 B.R. 44, 45 (Bankr. N.D. Ga. 1981). *See also In re MP Invs., LLC*, 2010 Bankr. LEXIS 6294, *10 (Bankr. S.D. Iowa) ("Generally, a time period of one year or less has been construed as satisfying the requirement of prompt payment of the cure amount."). The District believes that the payment schedule set forth above (four installments, with a reservation of the rights of BETA and CalPERS to seek an order of the Court accelerating the payments, and with final payments due within 6 months of the effective date of a confirmed plan) is sufficient assurance that the Contract default amounts will be promptly cured, within the meaning of § 365(b)(1)(A).

### C.  Limitation of Court's Authority in Chapter 9 Case

Section 904 of the Bankruptcy Code limits a court's power over municipal debtors and provides:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with-
>
> (a)  any of the political or governmental powers of the debtor;
>
> (b)  any of the property of revenues of the debtor; or
>
> (c)  the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. *See In re Richmond Unified School District*, 133 B.R. 221 (Bankr. N.D. Cal. 1991). Accordingly, this Court should defer to the District's determination that assumption of the Contracts is in the best interest of the District, its employees, and the community it serves.

The District's motion is based on this motion, the notice of hearing, and the supporting declaration of Wayne C. Allen. Copies of the notice are being served, by regular mail, on all persons listed on the List of Claims filed on October 31, 2012 as Docket No. 24 and all persons having filed and served a request for notice in the Chapter 9 case. Copies of the motion and supporting declaration are not served (except on those persons who receive the Court's electronic notice) because of their length. Copies of these items can be obtained by contacting the undersigned counsel.

**WHEREFORE,** the District requests that the Court enter an order authorizing the District to assume the BETA Agreements and the CalPERS Agreement, effective as of the filing date of October 17, 2012 and for such other and further relief as is appropriate.

Dated: January 10, 2013     FRIEDMAN & SPRINGWATER LLP

By: */s/ Andrea T. Porter*
Andrea T. Porter
Attorneys for District