FRIEDMAN & SPRINGWATER LLP
ANDREA T. PORTER (S.B. NO. 095984)
ELLEN A. FRIEDMAN (S.B. NO. 127684)
DANIEL A. NOLAN IV (S.B. NO. 284970)
33 New Montgomery Street, Suite 290
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044
aporter@friedmanspring.com

Attorneys for Mendocino Coast Health Care District

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MENDOCINO COAST HEALTH CARE DISTRICT, a political subdivision of the State of California,<br><br>Debtor. | Case No. 12-12753<br><br>CHAPTER 9<br><br>**MOTION FOR ORDER AUTHORIZING REJECTION OF EXECUTORY CONTRACT (UNITED FOOD AND COMMERCIAL WORKERS LOCAL 8)**<br><br>Date: April 12, 2013<br>Time: 10:00 a.m.<br>Place: 99 South E Street<br>       Santa Rosa, CA<br><br>Judge: Hon. Alan Jaroslovsky |

The Mendocino Coast Health Care District (the "District"), debtor in the above-captioned Chapter 9 case, seeks an order, pursuant to section 365(a) of the Bankruptcy Code, Rules 6006(a) and (c) of the Federal Rules of Bankruptcy Procedure, and Rule 9014-1 of the Bankruptcy Local Rules for the Northern District of California, authorizing the District to reject an executory contract between the Mendocino Coast District Hospital (the "Hospital") and United Food and Commercial Workers Local 8 ("UFCW8").

**RELIEF REQUESTED**

The District requests authority to reject that certain Memorandum of Understanding by and between the Hospital and UFCW8 covering the period of July 1, 2011 through June 30, 2014 (the "MOU"). A copy of the MOU is attached as Exhibit A to the

{00648586.DOC v 2}

declaration of Wayne C. Allen filed and served in support of this motion (the "Allen Declaration").

## STATEMENT OF FACTS

In support of this motion, the District represents as follows:

1. The District, a public agency formed in 1967 under the State of California Local Healthcare District Law for the purpose of constructing the Hospital to serve the people of Mendocino County, filed its voluntary petition under Chapter 9 of the United States Bankruptcy Code on October 17, 2012. The District operates two divisions: the Hospital and the Mendocino Coast Home Health & Hospice.

2. The Hospital is an acute-care facility completed in 1971. It is a small rural 25-bed hospital licensed by the State of California Department of Public Health and accredited by The Joint Commission. In 2006, as a result of its remote location and the needs of the relatively isolated community that it serves, the Hospital was designated a Critical Access Hospital by the federal government, a designation that entitles it to certain Medicare benefits and exemptions.

3. The District encompasses approximately 680 square miles and extends approximately 70 miles south from the Humboldt/Mendocino County line. The District is bordered on the west by the Pacific Ocean and includes the City of Fort Bragg and the communities of Westport, Mendocino, Albion and Elk. The Hospital serves an estimated population of 25,000. The closest alternative facility is in Willits, California, and a drive of thirty-seven miles that takes about fifty minutes over a rural road that, at times, is impassable.

4. On July 1, 2011, the District, on behalf of the Hospital, and UFCW8 entered into the MOU, which provides for a comprehensive compensation scheme that is binding on the Hospital and UFCW8 until June 30, 2014.

5. At the time the Hospital agreed to the terms of the MOU, the District's management believed that the District's financial condition was stable.

6. Mr. Allen returned to the District as its CFO in August 2011. By February 2012, he determined that the District needed to adjust the compensation mandated

{00648586.DOC v 2}

2

Case: 12-12753    Doc# 81    Filed: 03/07/13    Entered: 03/07/13 15:15:45    Page 2 of 7

under the MOU. He advised the District that, if it could not do so, and absent a dramatic improvement in the financial projections, the Hospital would run out of cash in the middle of November 2012. The District began negotiations with UFCW 8 in March 2012.

7. In spite of a 5% mandatory reduction in compensation taken by Hospital management in February 2012, the District's financial condition continued to deteriorate.

8. The District and UFCW8 conducted extended negotiations during 2012, including three months of negotiations required by the California Government Code as a prerequisite to the District's filing of this Chapter 9 case.

9. The parties were unable to reach an agreement and, when the District's September 2012 actual financials did not improve, the District's Board of Directors authorized the Chapter 9 filing.

10. Mr. Allen has have reviewed compensation paid by hospitals of similar size and designation in California. Although the wages paid to employees under the MOU are consistent with industry standards, the Hospital cannot afford the additional 3% wage increase required by the MOU in July 2013. In addition, certain benefits paid to employees now under the MOU are higher than industry standards, such as but not limited to employee contributions to the health care insurance premiums, employee contributions to pension payments, and employee cash-out of accrued paid time off (PTO).

11. Since the October 17, 2012 filing date, the District has implemented cost-saving measures including a staff reduction in force of 20 positions in February 2013.

12. A copy of the Hospital's financial cash projections through June 2013 is attached as Exhibit B to the Allen Declaration. The projections show that, as predicted, the Hospital ran out of operating cash in November 2012. The Hospital was forced to use funds designated for maintenance and repair and to allow accounts payable to increase by almost $2.0 million.

13. The District must replenish the repair and maintenance fund which is critical to the future safe operation of the Hospital. Unpaid vendors and other general

unsecured creditors will be offered a percentage of what they are owed under the District's plan for the adjustment of debt.

14. The projections also illustrate the fact that if the MOU remains in effect and the Hospital must pay the full compensation package that the MOU requires, then, even after the recent reduction in force, the Hospital cannot continue to operate.

15. Accordingly, the District submits that the MOU is a burden that the Hospital cannot assume if it is to remain open.

## DISCUSSION

### B. Application of the Business Judgment Test

Section 365(a) provides:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

Under section 365 of the Bankruptcy Code, the rejection of an executory contract is ordinarily subject to the "business judgment test." In *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523 (1943), the Supreme Court stated "[T]he questions whether a lease should be rejected and if not on what terms is should be assumed is one of business judgment." *Id.* at 550. The court should consider, in evaluating whether the debtor's decision is a proper exercise of its business judgment, is whether rejection will benefit the general unsecured creditors. *See Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 801 (9th Cir. Bankr. 1982).

In *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) the Supreme Court held that a collective bargaining agreement subject to the National Labor Relations Act can be rejected under section 365(a) of the Bankruptcy Code but provided limited additional protection for labor contracts. In addition to the deference given to the debtor's business judgment, the debtor must show that the agreement burdens the debtor and that the equities of

the case balance in favor of rejection. *Id.* at 521-527. The debtor need <u>not</u> show that the reorganization effort will fail absent the rejection. *Id.*

*Bildisco* is applicable in a Chapter 9 case. *International Brotherhood of Electrical Workers, Local 2376 v. City of Vallejo, CA (In re City of Vallejo, CA)*, 432 B.R. 262, 273 (E.D. Cal 2010); *Orange County Employees Assoc. v. County of Orange (In re County of Orange)*, 179 B.R. 177, 183 (Bankr. C.D. Cal. 1995). In *Vallejo*, the District Court reviewed the Bankruptcy Court's findings, specifically that:

> [t]here was little, if anything left for the City to cut apart from its labor expenses; that further reductions in the funding of services threatened the City's threatened the City's ability to provide for the basic health and safety of its residents....

432 B.R. at 275, and

> The Bankruptcy Court found that the City met its burden of proof by demonstrating that reasonable efforts to negotiate a voluntary modification were made and were not likely to produce a prompt and satisfactory solution.

*Id.*

The District has reduced its work force as far as it can. Further staff cuts are not possible if the Hospital is to maintain its standard of care and remain in compliance with all applicable state and federal regulations. In addition to allowing accounts payable to increase by an unprecedented amount, the Hospital used funds that were restricted for maintenance and repair in order to keep its doors open. These funds *must* be replenished.

The District has determined that the Hospital can continue to pay employees the 3% increase given in the third quarter of 2012 but that it cannot afford the additional 3% increase required by the MOU in July 2013. Finally, the Hospital continues to lose money because the benefits that it must pay under the MOU, including but not limited to retirement contributions and health care premiums, exceed similar benefits provided by California hospitals of a similar size and designation. The months of negotiations between the District and UFCW8 have failed to resolve the benefit issues.

C.  **Limitation of Court's Authority in Chapter 9 Case.**

Section 904 of the Bankruptcy Code limits a court's power over municipal debtors and provides:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with-
>
> (a)  any of the political or governmental powers of the debtor;
>
> (b)  any of the property of revenues of the debtor; or
>
> (c)  the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. *See Association of Retired Employees of the City of Stockton, et al. v. City of Stockton, California (In re City of Stockton, California)*, 478 B.R. 8 (Bankr. E.D. Cal 2012).

> The message derived from this history regarding the power of this court to interfere with the City's actions regarding retiree health benefits compels the conclusion that §904 prevents any federal court from doing what the plaintiff's request, regardless of whether the City's action is fair or unfair.

478 B.R. at 20; *In re Richmond Unified School District*, 133 B.R. 221 (Bankr. N.D. Cal. 1991). Accordingly, this Court should defer to the District's determination that rejection of the MOU is critical to the District's ability to propose and confirm a plan for the adjustment of its debt and is therefore not only a burden to the District but is in the best interests of its creditors.

The District's motion is based upon the notice of motion, this motion, and the supporting Allen Declaration, all of which are being served, by regular mail and in accordance with the Court's order limiting notice, on UFCW8 and its counsel, on the holders of the twenty largest unsecured claims in this case, a Committee of Unsecured Creditors not having been appointed at this time, and on all persons having filed and served a request for notice in the Chapter 9 case.

## CONCLUSION

The District has reduced its expenses and its work force as much as it safely can. The only significant expense that remains to be cut is those portions of the Hospital's

1 labor expenses, other than current wages, that exceed comparable benefits paid by similarly-
2 situated hospitals in California. The District has spent months in negotiations with UFCW8
3 that have not resulted in an agreement. The District has no choice remaining other than to
4 reject the MOU.

5       WHEREFORE, the District requests that the Court enter an order authorizing
6 the District to reject the MOU, effective as of the hearing date of April 12, 2013, and for such
7 other and further relief as is appropriate.

9 Dated: March 7, 2013        FRIEDMAN & SPRINGWATER LLP

By: */s/ Andrea T. Porter*
Andrea T. Porter
Attorneys for the District