ROBIN JOHNSON (SBN 133746)
LAW OFFICE OF ROBIN JOHNSON
701 Halidon Way
Folsom, CA 95630
Telephone: (916) 984-1646
Email: rjohnson@rkjlaw.net

Attorney for ALPHA Fund, a Joint Powers Authority

UNTIED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No.: 12-12753 |
| MENDOCINO COAST HEALTH CARE DISTRICT, | STIPULATION REGARDING DEBTOR'S ASSUMPTION OF EXECUTORY CONTRACT AND ALLOWANCE OF ADMINISTRATIVE CLAIM |
| Debtor. | |

This Stipulation is entered into by and between Mendocino Coast Health Care District (the "District") and ALPHA Fund, a Joint Powers Authority formed under Government Code Section 6500 et seq. (collectively the "Parties"), with reference to the following facts and recitals:

A. On October 17, 2012, the District filed a voluntary petition (the "Petition") under Chapter 9 of the Bankruptcy Code commencing the above-captioned bankruptcy case.

B. During the calendar year 2012, ALPHA Fund provided coverage for liabilities arising out of the workers' compensation laws of California, Labor Code Section 3700 et seq. This coverage was provided pursuant to the ALPHA Fund Joint Powers Agreement (the "Agreement") between the District and the other signatories to the Agreement, as it was amended on May 9, 2011. See Exhibit A

{00663096.DOCX V 3}

C.    The District, as an employer in the State of California, has a legal obligation to procure insurance against the liability imposed by the workers' compensation laws of California, Labor Code Section 3700(a), or obtain a certificate of consent to self-insure, either individually or as a participant in a joint powers agreement, from the Department of Industrial Relations, Labor Code Section 3700(c).

D.    The District obtained a certificate of consent to self-insure from the Department of Industrial Relations, by representing itself as a participant in the Agreement.

E.    As a condition of coverage under the Agreement, the District agreed to pay a deposit of $845,412 in twelve equal monthly installments in the amount of $70,451.

F.    Due to the filing of bankruptcy, the District did not make its payment of $70,451 for the month of October 2012.

G.    In addition to the amount owed for the October payment, there will be an adjustment to the deposit amount upon the completion of an audit of the District's payroll for the calendar year 2012, which may generate a contractual obligation to pay additional sums for the coverage provided during the year 2012, both prior to filing of bankruptcy and after such filing.

H.    The District desires to maintain the benefits of coverage, and to meet the legal obligation to secure payment of liabilities under the workers' compensation laws of California, by maintaining its participation in ALPHA Fund as a member in good standing.

NOW, THEREFORE, in consideration of the foregoing facts and recitals and the mutual promises and consideration set forth herein, the receipt and adequacy of which are hereby acknowledged, the Parties hereto hereby agree as follows:

1.    The Agreement is an executory contract assumable under section 365 of the Bankruptcy Code and is necessary for the continuing operations of the District.

2.    Upon assumption of the Agreement, all obligations of the District to ALPHA Fund will be administrative claims and ALPHA Fund will continue coverage of the District's liabilities under the workers' compensation laws of the State of California, which coverage is a legal requirement for the continuation of the District's operations.

{00663096.DOCX V 3}

3. After the assumption of the Agreement has been approved by an order of the Bankruptcy Court, the Parties will retain all rights and remedies provided under the Agreement, including the right of ALPHA Fund to cancel the Agreement, after a default by the District and in accordance with its terms, without relief from the automatic stay of section 362 of the Bankruptcy Code.

4. As of February 15, 2013, the District owes ALPHA Fund $70,451 for the non-payment of the District's obligation to make the monthly payment of that amount for the month of October 2012.

5. Additional amounts may be due upon an audit of the payroll for the year 2012.

6. The District agrees that all postpetition amounts due under the Agreement will be paid in the ordinary course of the District's business and that the unpaid prepetition amount of $70,451, or such amount as the Parties agree, will be paid in full on the earlier to occur of (i) the effective date of a plan for the adjustment of debt; or (ii) entry of an order dismissing the above-captioned bankruptcy case, unless otherwise agreed by ALPHA Fund and the District in writing.

7. This Stipulation may be executed in counterparts, and all such executed counterparts when taken together shall constitute an original of one and the same document. Counterparts may be transmitted by facsimile, electronic mail or other electronic means

LAW OFFICE OF ROBIN JOHNSON

Dated: March 21, 2013          By: /s/ Robin Johnson
                               Attorney for ALPHA Fund, a joint powers authority

FRIEDMAN & SPRINGWATER LLP

Dated: March 21, 2013          By: /s/ Andrea T. Porter
                               Attorneys for Mendocino Coast Health Care District

4824-2224-9491, v. 1

{00663096.DOCX V 3}

# Exhibit A

# ALPHA Fund Joint Powers Agreement

Article I.        Definitions and General Provisions
Article II.       Purpose, Participation and Term
Article III.      Organization and Administration
Article IV.       Contributions and Operations
Article V.        Claims Administration and Payment of Losses
Article VI.       Determination and Distribution of Projected Surplus
Article VII.      Voluntary Withdrawal or Involuntary Termination of a
Article VIII.     Fiduciary
Article IX.       Actuary
Article X.        General Counsel
Article XI.       Amendment and Termination
Article XII.      Law of California
Article XIII.     Miscellaneous

(As Amended 5-9-2011)

**THIS AGREEMENT** is entered into pursuant to the provisions of Title 1, Division 7, Chapter 5, Article 1 (Section 6500, et seq.) of the California Government Code, relating to joint exercise of powers, between such local government entities, non-profit hospital corporations and other non-profit corporations which provide health care services that a healthcare district could provide, which have signed this Agreement, and those that may sign hereafter, for the purpose of operating a program of jointly pooling workers' compensation self-insurance for such districts, and shall be known as ALPHA Fund.

## WITNESSETH

**WHEREAS**, a program of jointly pooling self-insurance for worker's compensation risks, known as Program ALPHA, has heretofore been formed and operated for Healthcare Districts and District Hospitals in California by the Association of California Healthcare Districts, Inc.; and

**WHEREAS**, it is deemed desirable to offer to other local government entities, non-profit hospital corporations and other non-profit corporations which provide health care services that a healthcare district could provide, an alternative means of providing coverage of their worker's compensation risks; and

1

WHEREAS, the development, organization and implementation of such a program is of such magnitude that it is necessary for the parties to join together with this Joint Powers Agreement in order to accomplish the purposes herein set forth; and

WHEREAS, it has been demonstrated that a joint powers self-insurance program can adequately serve the needs of all the parties; and

WHEREAS, Title 1, Division 7, Chapter 5 of the Government Code of the State of California authorizes joint exercise by two or more public agencies of any power common to them; and

WHEREAS, it is to the mutual benefit and in the best public interest of the parties to this Agreement to join together to establish this Joint Powers Agreement for the purposes hereinafter set forth:

NOW, THEREFORE, for and in consideration of the mutual advantages to be derived, and in consideration of the execution of this Agreement by other local government entities, non-profit hospital corporations and other non-profit corporations which provide health care services that a healthcare district could provide, each of the parties hereto does hereby agree as follows:

## I. Definitions and General Provisions

1. *"Act"* The California Joint Exercise of Powers Act as set forth in Title 1, Division 7, Chapter 5, Article 1 of the Government Code of the State of California.

2. *"Administrator"* The contractor or consultant retained by the Association of California Healthcare Districts, Inc. to administer ALPHA Fund.

3. *"Coordinator"* The Association of California Healthcare Districts, Inc. and/or any successor in interest or subsidiary entity formed by and designated thereas by the Association of California Healthcare Districts, Inc.

4. *"ALPHA Council"* The body within ALPHA Fund consisting of representatives of Participants, and charged with the responsibility of overseeing ALPHA Fund, and as established by Coordinator pursuant to Bylaws incorporated herein.

5. *"ALPHA Fund"* The self-insuring plan created by this Joint Powers Agreement and related documents.

6. *"Certificate of Participation"* The documents issued to each Participant evidencing its participation in ALPHA Fund.

7. *"Director"* A person holding the position of an elected member of the board of directors of a Participant.

8. *"Fiduciary"* The bank or trust company organized under the laws of the State of California, which shall have legal title to the funds and manage the investment of them for the benefit of the Participants.

9. *"Funds"* Unless the context otherwise specifies, all monies paid into ALPHA Fund, any earnings thereon, or any other sums coming to ALPHA Fund from any source.

2

10. **"Governing Board"** The Board of Directors of Coordinator.

11. **"Manager"** An employee holding the position of chief administrative or management office of a Participant, i.e., a "general manager," "administrator," or "chief executive officer."

12. **"Participant"** Any local government entity, non-profit hospital corporation, or other non-profit corporation which provides health care services that a healthcare district could provide, which is signatory to this Joint Powers Agreement.

## II. Purpose, Participation and Term

1. **Purpose**. The purposes of ALPHA Fund are:

a) To provide Participants with the mechanisms to accumulate, administer and invest funds for the purpose of self-insuring as a group their workers' compensation liability up to a specified, predetermined amount;

b) To secure excess insurance or reinsurance on a group basis;

c) To provide essential protection to Participants otherwise not obtainable;

d) and, to effect cost savings to Participants in the administration of such program in order to reduce the cost of health care and/or other public services to the patient-customer.

The benefits of ALPHA Fund shall not be available to any person or entity other than a healthcare district organized pursuant to the Local Hospital District Act of the State of California, other local government entity as is established pursuant to law, non-profit hospital corporations, and other non-profit corporations which provide health care services that a healthcare district could provide, and which signs this Joint Powers Agreement.

2. **Non-Profit Corporations**. The benefits of participation in the ALPHA Fund shall be available, pursuant to Section 6527 of the California Government Code, to non-profit hospital corporations, and other non-profit corporations which provide health care services that may be provided by a healthcare district, upon the following terms and conditions:

a) The Governing Board, upon the recommendation of the ALPHA Council, makes findings at a public meeting that: (1) the participation of the non-profit hospital corporation or other non-profit corporation in the ALPHA Fund will be substantially related to and in furtherance of the governmental purposes of the ALPHA Fund; and (2) the healthcare district and other local governmental entity Participants in the ALPHA Fund will maintain control over the activities of the Fund through the governance, management or ownership of the Fund;

b) A reserve account has been established and maintained by the Participants sufficient to operate the Fund on an actuarially sound basis;

3

c) The aggregate payments made on behalf of the Participants under the Agreement shall not exceed the amounts available in the Fund; and,

d) A public meeting shall be held prior to any dissolution or termination of any enterprise of the Fund operating under this Section 2 or Article II, to consider the disposition, division or distribution of any assets acquired as a result of the joint exercise of powers under this section.

3. *ACHD Membership*. Every Health Care District participating in the ALPHA Fund shall be a regular member in good standing of the Association of California Healthcare Districts, Inc. Every other governmental entity, non-profit hospital corporation and non-profit healthcare corporation participating in the ALPHA Fund shall be an associate member in good standing of the Association of California Healthcare Districts, Inc.

4. *Term*. This Agreement shall become effective as of the earliest date on which any two Participants have signed this Agreement, and shall continue in full force and effect for a term of fifteen (15) years from such date unless sooner terminated as provided in Article XI hereof.

## III. Organization and Administration

1. *Responsibility*. The responsibility for the administration of ALPHA Fund shall be vested in Coordinator, functioning through its Governing Board, officers, and ALPHA Council as described in the Bylaws

incorporated herein. Coordinator shall have the authority to carry out all functions of ALPHA Fund. Coordinator may carry out the functions of ALPHA Fund either directly or by contracting with another party or parties. On behalf of and as agent for Participants, Coordinator shall acquire, hold and dispose of real and personal property necessary or appropriate to carry out the functions of ALPHA Fund.

2. *Delegation of Authority*. It is anticipated that many of the functions required of Coordinator herein will be performed by independent contractors or consultants. Coordinator shall therefore have the right to delegate to any independent contractors or consultants, any of its powers, duties, obligations, responsibilities and rights on all matters, including, but not necessarily limited to, all day-to-day management of the Fund, investments, computation and collection of contributions, loss control, risk management, claims processing, defense and litigation or any other activity which Coordinator may have the right or obligation to perform.

Coordinator shall also have the right to delegate its authority to ALPHA Council and committees thereof in accordance with the Bylaws attached. Any delegation of authority must be in writing and may by the terms of such writing be a continuing and general authority, which shall continue until revoked in writing. Notwithstanding the foregoing, the Coordinator shall not delegate its authority to:

a) Establish and assess the Participants' contributions;

4

b) Expel or terminate any Participant;

c) Terminate ALPHA Fund because of insolvency or danger thereof.

3. **Compensation**.  Coordinator shall be paid such reasonable compensation as shall be agreed upon, from time to time, by Governing Board and ALPHA Council.  Said compensation shall be an expense of ALPHA Fund.

4. **Agents**.  Each Participant hereby appoints Coordinator and Coordinator's delegates or designees to act as agent in executing all contracts, reports, waivers, agreements and service contracts and to make and arrange for the payment of claims and other things required for the proper and orderly operation of ALPHA Fund.

5. **Bylaws**.  ALPHA Fund shall be governed pursuant to this Agreement and to the Bylaws attached hereto as Exhibit A.  Each party to this Agreement agrees to comply with and be bound by the provisions of the said Bylaws and further agrees that ALPHA Fund shall be operated pursuant to this Agreement and the said Bylaws.

6. **ALPHA Council**.  Upon this Agreement becoming effective, and at such time as is prescribed by the Bylaws, Coordinator shall establish a body to be known as "ALPHA Council."  The said Council shall be responsible for overseeing the operation of ALPHA Fund, subject to the authority and direction of Coordinator.  Coordinator, in consultation with ALPHA Council, shall establish such policies and guidelines as may be necessary to carry out ALPHA Fund.  The organization and structure of ALPHA

Council shall be established in the Bylaws attached hereto.

# IV. Contributions and Operations

1. **Contributions**.  The parties agree that each Participant shall make payment of contributions to ALPHA Fund. The amount of such contribution for each Participant shall be determined by Coordinator.  It is agreed that there must be a timely and orderly method of determining and paying such contributions.  The Coordinator is therefore authorized and directed to establish the rate of contribution for each Participant and the time schedule for payment of such contribution.  The timely payment of all contributions to ALPHA Fund by each Participant shall be a condition precedent to the continuation of participation in ALPHA Fund.

2. **Annual Nature of Contributions**.  Participation in ALPHA Fund, except initial participation which may be less than one year, shall be for one year at a time commencing July 1 and ending June 30.  Participation may be renewed for additional one year terms by submitting to Coordinator prior to the close of the then current term, such information as Coordinator may require, and by remitting to the Coordinator upon such payment schedule as the coordinator shall specify, the Participant's contributions for the following year.

3. **Computation and Notice of Contribution**. The amount to be contributed by each Participant in ALPHA Fund shall be determined by Coordinator no less than sixty (60) days prior to the beginning of the fiscal year.

5

The computation shall be based on independent actuarial computations taking into account factors such as, but not limited to, the number of employees of the Participant, the types of employees of the Participant, the annual budget of the Participant, all relevant loss experience of the Participant, and rates established through the California Inspection Rating Bureau. Coordinator shall utilize such actuarial recommendations in determining the contributions for each Participant.

4. *Loss Control and Risk Management*. Participants agree to follow the loss prevention and risk management recommendations of Coordinator, and to abide by all conditions, requirements, rules and regulations regarding loss control and risk management which may be promulgated by Coordinator.

5. *Right to Inspect*. Each Participant agrees that Coordinator, ALPHA Council, Administrator, or any of their respective agents, servants, employees or attorneys shall be permitted at any reasonable time to inspect Participant's property and operations and to examine Participant's books, documents, and records as necessary in the proper operation of ALPHA Fund.

6. *Audit*. Coordinator shall obtain an annual audit of the financial affairs of ALPHA Fund, by a certified public accountant at the end of each fiscal year in accordance with generally accepted auditing principles. A copy of the annual audit report shall be delivered to each Participant. The costs of such audit shall be paid from the Funds of ALPHA Fund.

7. *Binding Nature*. Any local government entity, non-profit hospital corporation, or other non-profit corporation which provides health care services that a healthcare district could provide which makes application for participation in ALPHA Fund, and is accepted, and signs this Agreement, shall thereupon become a Participant and shall be bound by all the terms and conditions hereof.

8. *Deposit of Funds*. Participants shall pay contributions to coordinator which shall deposit them with Fiduciary, to be administered by Coordinator pursuant to the provisions of ALPHA Fund. The contributions and income therefrom shall be accumulated to pay the workers' compensation liability claims against each Participant together with allocated costs and administrative costs, up to a specified amount for each claim, such amount to be determined from time to time by Coordinator upon the advice of Administrator. Claim amounts in excess of such specified amount shall be covered by excess insurance or reinsurance as set forth in Section 10 of this Article V.

Funds received by Coordinator as contributions shall be invested in accordance with the laws of the State of California pertaining to the investment of excess funds of local government entities, where applicable.

9. *Contributions in Kind*. Without in any way limiting the powers otherwise provided for in this Agreement, the Bylaws or by statute, Coordinator shall have the power and authority to receive, accept and utilize the services of personnel offered by any Participants, or their representatives or agents; to receive, accept and utilize property, real or personal, from any Participant or its agents or representatives; and to receive, accept, expend and disburse funds by contract or

6

otherwise for purposes consistent with the objectives of ALPHA Fund, which funds may be provided by any Participants, their agents, or representatives.

10. ***Excess Insurance and Reinsurance***.  Coordinator shall obtain or cause to be obtained such excess insurance or reinsurance as may be necessary in the judgment of the Actuary and ALPHA Council.  The expense of such excess insurance or reinsurance shall be paid from the Funds of ALPHA Fund.

## V. Claims Administration and Payment of Losses

1. ***General***.  The principal purpose for the establishment of ALPHA Fund is to provide for the orderly presentation, examination, investigation, defense or settlement of certain identified claims made by third parties against the Participants.  It is agreed and understood that ALPHA Fund shall use the sums contributed by all Participants to pay all losses, claims, and expenses.

2. ***Presentation of Claims***.  The services and benefits to be provided under ALPHA Fund shall be paid or furnished to or for the benefit of the Participant with respect to a particular incident or claim only if ALPHA Fund is notified as required by the rules promulgated by ALPHA Fund.

Upon presentation of the claim, the following accounting procedure shall be followed in connection with such claims:

a) The claims shall be evaluated as to probable loss exposure and defense costs.

b) The sums so determined shall be established as a reserve.  Such reserve sums shall be held for the administration and payment of such claim, and for no other purpose.

c) Reserves shall be established in the order of the presentation of claims.

d) The reserves shall be adjusted from time to time based upon the then evaluation of such claim reserved against.

At intervals to be agreed upon by Coordinator and Administrator, Administrator shall advise Coordinator and Fiduciary as to the current status of claims against Participants.

3. ***Investigation and Defense***.  Administrator will investigate, or cause to be investigated, all such claims referred to in the foregoing paragraphs and will attempt to adjust or settle such claims.  As required and subject to the provisions of the Coverage Agreement, ALPHA Fund, through its designated counsel, will provide legal defense of claims against Participants.  The Participant agrees to aid ALPHA Fund in such matters and to provide and make available all information and personnel as may be reasonably required in the opinion of Administrator and General Counsel to fully investigate and defend the claim.

4. ***Payment of Benefits***.  Fiduciary shall pay claims as directed in writing by Coordinator.  Said writing shall contain the following:

7

a) The name, address and social security number of the payee;

b) The amount to be paid;

c) The manner in which payment is to be made;

d) Any conditions, limitations, or special instructions with respect to such payment; and

e) The authorized signature(s) of Coordinator.

It is understood that Coordinator and Administrator shall use their discretion in making judgments and assumptions as to the actual value of any claim in making such reserves based on such judgment.

# VI. Determination and Distribution of Projected Surplus

1. **Initial Determination of Projected Surplus**. At a time not less than two years after the receipt of the audited financial statements for each Fiscal Year, commencing with the time two years after receipt of the audited financial statements for Fiscal Year 2004 – 2005, the ALPHA Council with the concurrence of the Governing Board shall make initial determinations regarding the total amount of reserves, if any, that exceed: (1) the projected amount required to satisfy all claims-related costs and expenses for that Fiscal Year, and (2) any additional amount set aside to increase the total reserves of the Fund. The amount of reserves determined to be in excess of this combined amount ((1) and (2)) may be initially designated as surplus reserves (herein referred to as "surplus").

The Coordinator in consultation with the actuaries of the ALPHA Fund shall make recommendations to the ALPHA Council and the Governing Board regarding the amount of any projected surplus and the schedule of distribution for any proposed dividends. Whatever the initial determination of the ALPHA Council and the Governing Board regarding the existence of a projected surplus in the reserves for a Fiscal Year, the Council and the Board may reassess their determinations regarding the existence or the amount of any surplus at any later time. Dividends distributed from the projected surplus for a specified Fiscal Year shall be paid only from the surplus established for that Fiscal Year.

2. **Eligibility for Dividends**. The rationale for distributing the projected surplus in annual installments is to provide an economic incentive for continuing participation in the ALPHA Fund. The retention of all of its Participants is a central goal of the ALPHA Fund. To be eligible to receive any dividend from a projected surplus, a Participant must have been a Participant in good standing during the Fiscal Year in which the surplus was created, and must be a Participant in good standing at the time of the distribution of each annual installment. A Participant in the ALPHA Fund who thereafter becomes fully self-insured and participates in Delta Group JPA shall continue to be eligible to receive annual dividend installments from the ALPHA Fund arising from its participation in the ALPHA Fund.

3. **Amount of Dividend**. The ALPHA Council and the Governing Board shall approve the amount of the dividend to be distributed to each Participant. The amount of the dividend distributed to each Participant shall be reasonably

8

determined by Coordinator based on each Participant's proportional share of the total contributions for that Fiscal Year, the overall cost of claims and loss prevention performance of each Participant for that Fiscal Year, and such other criteria as may be established by the ALPHA Council and Governing Board.

4. ***Schedule of Distribution of Dividends***. As recommended by the ALPHA Council and as approved by the Governing Board, a part or the entire amount of the projected surplus shall be returned to the Participants in not less than three (3) annual installments. The total dividend approved for distribution in annual installments need not be equal (1/3, 1/3, 1/3), but may reflect any distribution schedule established by the ALPHA Council and the Governing Board.

The first annual installment shall be paid in the same Fiscal Year in which the initial determination of projected surplus is made. The surplus amounts initially designated to be distributed as dividends in Year 2 and Year 3 shall be subject to further Council and Board review and approval prior to distribution in each Fiscal Year, including the approval of any increase or decrease in the amount of the dividend to be distributed.

## VII. Voluntary Withdrawal or Involuntary Termination of a Participant

1. ***Notice of Withdrawal of Participant.*** A Participant may terminate its participation in ALPHA Fund by giving at least one hundred twenty (120) days written notice, but such Participant shall remain liable for any unpaid contribution or other expenses which shall have accrued

prior to the termination date set forth in its notice. Upon voluntary withdrawal at any time other than the end of a Plan year, in addition to any other amounts due, a Participant shall be charged an amount equal to five percent (5%) of its contributions to ALPHA Fund during the most recent twelve (12) months of participation.

2. ***Withdrawal.*** When a Projected Deficit Exists In ALPHA Fund. In the event of a voluntary withdrawal of a Participant at a time when the audited financial statements reflect a projected deficit in the total reserves of the ALPHA Fund, except as otherwise set forth in Section 4 and Section 5 of this Article VII, Coordinator shall collect from the withdrawing Participant its pro rata share of all the assets and obligations of ALPHA Fund, and collect any administrative charges including actuarial fees from such withdrawal, all as reasonably determined by Coordinator. A withdrawing Participant's pro rata share of the total assets and obligations shall be in the same proportion as its gross contributions during the term of that Participant's participation, bear to the gross contributions of all current Participants at the time of the Participant's withdrawal. If a Participant withdraws at any time other than the end of the Plan year, the Coordinator shall reasonably determine the withdrawing Participant's pro rata share of the total assets and obligations of the ALPHA Fund as of the effective date of termination.

Any amounts due from a withdrawing Participant shall be due and payable as of the effective date of termination. With the approval of the Governing Board, any amounts due from a withdrawing Participant may be paid in

9

equal monthly installments over a period not to exceed twelve (12) months. At the election of a withdrawing Participant and with the approval of the Governing Board, the claim liabilities of a withdrawing Participant may be transferred from the ALPHA Fund to another workers' compensation joint powers authority, self-insurance program or other approved insurance program as provided in the California Code of Regulations, Section 15360 et seq. As of the effective date of termination, the ALPHA Fund shall have no further obligation or liability for the claim liabilities being transferred by a withdrawing Participant.

If a withdrawing Participant elects to transfer its claim liabilities from the ALPHA Fund at a time when there is a projected deficit in the ALPHA Fund, the withdrawing Participant shall pay to the ALPHA Fund the amount by which the withdrawing Participant's pro rata share of the projected deficit of the ALPHA Fund, as of the effective date of termination, exceeds the value of the claim liabilities being transferred. The value of claim liabilities being transferred and the amount of any projected deficit in the ALPHA Fund shall be reasonably determined by the Coordinator. If the value of the claim liabilities being transferred, as of the effective date of termination, exceeds a withdrawing Participant's pro rata share of the projected deficit of the ALPHA Fund, the withdrawing Participant shall not be obligated to pay its pro rata share of the projected deficit. The withdrawing Participant shall pay all other charges and assessments arising from its participation and its withdrawal.

3. **Withdrawal When Projected Surplus Exists In ALPHA Fund**. In the event of a voluntary withdrawal of a Participant at a time when the audited financial statements reflect: (1) a projected surplus in the total reserves of the ALPHA Fund, (2) a projected surplus in the reserves for a prior Fiscal Year, and (3) the Governing Board and the ALPHA Council as provided in Article VI have previously designated and approved the distribution of a part of the projected surplus for the prior Fiscal Year as a dividend in the current Fiscal Year, the Coordinator shall pay to the withdrawing Participant its previously approved dividend at the time the dividend is distributed to all other Participants. The Coordinator at the time of payment of the dividend shall also collect from the Participant or otherwise offset the unpaid amount of any administrative charges including actuarial fees arising from the withdrawal of the Participant, all as determined reasonably by Coordinator.

4. **Limitations on Entitlement to Share of Net Assets or Surplus**. Except as specifically set forth in this Article and Article VI of this Agreement, after a Participant has been involuntarily terminated or has given its written notice of voluntary withdrawal, the terminated or withdrawing Participant shall have no legal or equitable right or claim or entitlement to any share of the net assets of the Fund or the projected surplus reserves for any prior Fiscal Year or the current Fiscal Year, and shall have no legal or equitable right or claim to any dividend or installment, whether previously designated or previously approved by the Governing Board or the ALPHA Council.

5. **Indemnification of New and Renewed Participants – Deficit Option**. If there is a deficit reflected in the audited financial statements of the ALPHA Fund

10

for the fiscal year immediately preceding a Participant's initial or renewed participation in the Fund, the Governing Board upon the recommendation of the ALPHA Council may authorize the Fund to enter into an individual contract pursuant to the Section 895.4 of the Government Code to indemnify the new or renewed Participant for that portion of the Participant's deficit payment obligation that is based on the amount of the previously existing deficit. This indemnification shall be limited to a deficit payment obligation arising from the Participant's voluntary withdrawal from the ALPHA Fund under Section 1 of this Article VII.

An individual contract with a new or renewed Participant in the ALPHA Fund under this section shall include, among such other terms and conditions as may be required by the ALPHA Council and the Governing Board, the following:

a) An agreed limitation on the amount of indemnification to that portion of the Participant's deficit payment obligation that is based on the amount of the previously existing deficit;

b) An agreed limitation on the term of the contract to the close of the first fiscal year, including the same fiscal year of the Participant's new or renewed participation, in which the audited financial statements of the ALPHA Fund no longer reflect a deficit. On the last day of such fiscal year, the Participant's right to indemnification pursuant to the individual contract shall immediately cease and not be subject to reinstatement if a deficit in the Fund should occur thereafter;

c) An acknowledgement that the right to indemnification applies only to a deficit payment obligation arising from a voluntary withdrawal from the ALPHA Fund under Section 1 and Section 2 of this Article VII of this Agreement, and does not apply to other obligations of a Participant for payments, assessments or contributions under any other sections of the Agreement.

6. **Indemnification of New and Renewed Participants** – *Surplus Option*. If there is a surplus reflected in the audited financial statements of the ALPHA Fund for the fiscal year immediately preceding a Participant's initial or renewed participation in the Fund, the Governing Board upon the recommendation of the ALPHA Council may authorize the Fund to enter into an individual contract pursuant to Section 895.4 of the Government Code to indemnify the new or renewed Participant for: (1) any portion of a deficit obligation that subsequently arises during the initial two (2) complete fiscal years of participation in the ALPHA Fund; and (2) the amount of any post-withdrawal assessment that arises under Section 8 of this Article VII during the three (3) year period following the Participant's withdrawal.

This indemnification shall be limited to the joint and several obligation for claims provided in current Section 9 of this Article VII, and/or an assessment obligation under current Section 8 of this Article VII arising from or following the Participant's voluntary withdrawal from the ALPHA Fund under Section 1 of this Article VII. At the end of the period of indemnification, the new or renewed Participant shall have each and all of the

Case: 12-12753   Doc# 91   Filed: 03/27/13   Entered: 03/27/13 14:38:17   Page 15 of 34

rights and obligations of all Participants under this Agreement.

An individual contract with a new or renewed Participant in the ALPHA Fund under this section shall include, among such other terms and conditions as may be required by the ALPHA Council and the Governing Board, the following terms and conditions:

An agreed exclusion of the Participant's right or entitlement to any dividend or distribution of surplus arising from any fiscal year during which the new or renewed Participant was entitled to indemnification under this Section 6 of Article VII. Nonetheless, a new or renewed Participant who continues to participate in the ALPHA Fund after the end of the period of indemnification, and who otherwise would be eligible thereafter to receive a dividend or distribution of surplus from a fiscal year during the period of indemnification, shall be eligible to receive such dividend or distribution of surplus as provided in Article VI.

An agreed limitation on the term of the contract to no longer than the last day of the second complete fiscal year following the new or renewed participation in the ALPHA Fund.

An acknowledgement that the right to indemnification is limited to the joint and several obligation for claims provided in current Section 9 of this Article VII, and/or an assessment obligation under current Section 8 of this Article VII arising from or following the Participant's voluntary withdrawal from the ALPHA Fund under Section 1 of this Article VII.

7. *Involuntary Termination*. A Participant may be involuntarily terminated by Governing Board upon recommendation of ALPHA Council for:

a) Failure to pay any contribution or assessment when due; or

b) Failure to concur in any amendment of this Agreement approved by the required number of Participants as set forth herein; or

c) Failure to give prompt notification to Administrator of incidents or claims; or

d) Upon recommendation of Administrator, for failure to implement loss control or risk management recommendation; or

e) Incurred losses exceeding 100% of that Participant's annual contribution for any two of three consecutive years, accompanied by failure to promptly comply with recommendations made by Coordinator's consultants for implementation or improvement of safety programs.

Such involuntary termination may be effected by Coordinator after a hearing by Governing Board in which the Participant shall have full opportunity to show cause why it should not be terminated.

Coordinator shall adopt such other rules and guidelines as it may deem necessary to implement the provisions of this Section.

In case of involuntary termination for failure to pay any contribution or assessment when due, Coordinator shall establish such notice periods as it may

12

deem necessary or appropriate. In all other cases of involuntary termination, Participant shall be given sixty (60) days' notice of termination.

8. **Continued Liability**. Upon any withdrawal or involuntary termination of a Participant, the said Participant shall continue to be responsible for any additional assessments or contingencies required because of a workers' compensation claim against any Participant arising out of facts occurring while the withdrawing or terminating Participant was a Participant. If at any time within three (3) years after a Participant's withdrawal or termination, Coordinator, in its sole discretion, determines that ALPHA Fund is in danger of insolvency, Participant may be assessed to maintain the solvency of the ALPHA Fund program. The amount of any such terminated or withdrawn Participant's assessment shall be as reasonably determined by Coordinator in reference to this Article VII.

9. **Pro Rata Liability and Indemnification of Participants**. Except as otherwise provided by an individual contract pursuant to Section 5 and Section 6 of this Article VII, each Participant shall be liable for its pro rata share of the debts and liabilities of ALPHA Fund, and its pro rata share of all debts and liabilities for Workers' Compensation claims against all Participants arising out of facts occurring while a Participant. To achieve such purpose, each Participant indemnifies and holds harmless the other Participants for any loss, cost or expense that may be imposed upon each other Participant in excess of such pro rata liability. The rules therefore as set forth in Civil Code Section 2778 are hereby made a part of this Agreement.

# VIII. Fiduciary

1. **Fiduciary**. Coordinator shall appoint a Fiduciary which shall be a recognized independent fiduciary such as a bank or trust company organized under the laws of the State of California and authorized by law to administer and control funds.

2. **Compensation**. Fiduciary shall be paid such reasonable compensation as shall be agreed upon, from time to time, by Fiduciary and Coordinator. Said compensation shall be an expense of ALPHA Fund.

3. **Resignation**. Fiduciary may resign at any time by delivering written notice to Coordinator. Any such resignation shall be effective not less than sixty (60) days after delivery of notice.

4. **Removal**. Coordinator may remove Fiduciary at any time by delivery of written notice of Fiduciary. Such removal shall be effective not less than sixty (60 days after such delivery.

5. **Appointment of Successor Fiduciary**. Upon removal, resignation or other termination of Fiduciary, Coordinator shall appoint a successor Fiduciary within thirty (30) days following the date Fiduciary fails to qualify or ceases to act.

6. **Successor Fiduciary**. Any successor Fiduciary shall be a recognized independent Fiduciary such as a bank or trust company organized under the laws of the State of California and authorized by law to administer and control funds. All successor Fiduciaries shall have the same powers, authorities, obligations, and limitations as the original Fiduciary. The appointment of any successor Fiduciary

13

shall be effective upon the date the terminating Fiduciary ceases to act.

# IX. Actuary

1. **Appointment**.  Coordinator shall retain an Actuary.

2. **Duties**.  Actuary shall have all duties and authorities as may be delegated to it by Coordinator in a written contract between Actuary and Coordinator.  It is contemplated that the duties of Actuary shall include but not necessarily be limited to the following:

   a) Recommend contribution rates;

   b) Review rating structure;

   c) Monitor claims and analyze loss reserves;

   d) Monitor program participation;

   e) Assist Coordinator in financial planning;

   f) Evaluate reinsurance proposals.

3. **Payment**.  The professional fee paid Actuary for its services shall be an expense of ALPHA Fund.  The professional fee may be based on a flat sum, an hourly rate, or other method as the parties may specify.  Unless otherwise in the contract, the professional fee shall be full payment by ALPHA Fund for discharge of Actuary's duties.  The professional fees shall include all overhead expenses of Actuary except extraordinary items such as duplication of copies, long distance telephone calls, motels, hotels, travel, or other items not incidental to normal overhead.

4. **Termination**.  The contract between Coordinator and Actuary may be terminated by either party on thirty (30) days' written notice to other party of such termination, in which event Actuary shall be paid for all services rendered by it up until the effective date of such termination, but shall not be paid for any work it may do thereafter except as otherwise specifically agreed.  Upon termination, Actuary shall return all books, records, files, and other items pertaining to ALPHA Fund, its Participants, and their claims to Coordinator or its designee, promptly upon request by Coordinator.

# X. General Counsel

1. **Appointment of General Counsel**.  Coordinator shall retain a general counsel.

2. **Duties**.  General Counsel shall have all duties and authorities as may be delegated to in writing by Coordinator.  It is contemplated that General Counsel shall have and perform the following duties:

   a) Provide legal counsel with respect to all contracts entered into by Coordinator.

   b) Provide legal counsel with respect to loss control, risk management, and claims processing.

   c) Supervise and coordinate the defense of claims against Participants which may include retaining appropriate legal counsel on a case by case basis with the consent of Coordinator.

14

d) Provide all general legal services required by Coordinator including, but not limited to, the review of all rules and regulations of Fiduciary, Coordinator, or Administrator prior to the implementation and defense of any claims made against ALPHA Fund arising out of its operation.

e) Other duties as requested by Fiduciary, Coordinator, ALPHA Council or Administrator.

3. **Payment**. The professional fee paid General Counsel for its services shall be an expense of ALPHA Fund. The professional fee may be based on a retainer, an hourly rate or other method as the parties may specify. Unless otherwise specified in the contract, the professional fee shall be full payment by ALPHA Fund for discharge of General Counsel's duties. The professional fees shall include all overhead expenses of General Counsel except extraordinary items such as duplication of copies, long distance telephone calls, motels, hotels, travel expense and other items not incidental to normal overhead.

4. **Termination.** The contract between Coordinator and General Counsel may be terminated by either party on thirty (30) days' written notice to other party of such termination, in which event General Counsel shall be paid for all services rendered by it up until the effective date of such termination, but shall not be paid for any work it may be thereafter except as otherwise specifically agreed. Upon termination, General Counsel shall return all books, records, files, and other items pertaining to ALPHA Fund, its Participants, and their claims to Coordinator or its designee.

# XI. Amendment and Termination

1. **Amendment**. Amendments to this Agreement may be proposed by the Governing Board, the ALPHA Council, or any Participant. Every amendment must be approved by a majority vote of ALPHA Council and by a majority of Governing Board. Upon such approval the proposed amendment shall be forwarded to each Participant, and must be approved by written vote of a majority of the Participants within sixty (60) days after the date of submission to Participants.

No amendment shall increase the duties or liabilities of either the Coordinator, ALPHA Council, or Administrator without the written consent of the affected party or parties.

Any amendment so approved shall become effective on the July 1 next following adoption as prescribed above unless a sooner effective date is specified in the amendment.

2. **Termination by Agreement**. Participants may terminate ALPHA Fund without a successor entity effective as of the end of the then current fiscal year by an instrument in writing approved by a majority vote of ALPHA Council and by Governing Board, executed by a majority of the Participants; provided, however, if ALPHA Fund shall be so terminated, such termination shall not reduce or terminate the rights, benefits, and obligations of any Participant as to any claim theretofore presented.

3. **Termination by Withdrawals**. If, at any time, by reason of withdrawals, terminations or membership, or excessive losses, the Actuary shall determine that the Fund is no longer economically

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 19 of 34

feasible or actuarially sound, then ALPHA Fund shall be terminated and dissolved by Governing Board.

4. ***Disposition of Funds Upon Termination***. Upon termination of ALPHA Fund, Fiduciary shall retain in a liquidation fund such sums up to the entire amount of ALPHA Fund as the Coordinator deems sufficient to pay the remaining obligations of the program. In the alternative, Coordinator may insure or reinsure all outstanding liabilities of Participants. Any funds remaining after termination of ALPHA Fund and after adequate provision for all liabilities and claims thereunder shall be distributed to each Participant in the same proportion as the total contributions paid by the Participant, reduced by the amount of losses and allocated claims expenses paid on behalf of that Participant, bear to all contributions paid by all Participants, reduced by the total losses and allocated claims expenses paid on behalf of all Participants from the inception of ALPHA Fund to its termination. If Coordinator insures or reinsures all outstanding liabilities of Participants, any funds remaining in excess of amounts necessary to pay the cost of such insurance or reinsurance shall be distributed to Participants in accordance with this Section not later than twelve months after payment of the final insurance or reinsurance premium. If Coordinator elects to liquidate the liabilities by means of a liquidation fund, any excess funds shall be distributed not later than ten (10) years following the date of termination of ALPHA Fund.

## XII. Law of California

This Agreement shall be interpreted according to the laws of the State of California.

## XIII. Miscellaneous

1. ***Binding Nature***. This Agreement contains the entire agreement of the parties and shall be binding upon and inure to the benefit of the original parties hereto and any substitute or additional parties who are bound hereby in accordance with the provisions hereof, their successors and assigns.

2. ***Dispute Resolution***.

a) In the event of any dispute between the ALPHA Fund and a current or former Participant regarding their respective rights and obligations under this Agreement, including the obligations of a Participant to timely make contributions to the ALPHA Fund and/or to satisfy the payment obligations of a withdrawing Participant under Article VI, representatives of the ALPHA Fund and the Participant shall schedule a meet and confer session as part of a good faith effort to resolve the dispute. The meet and confer session may be held in person or by telephone conference and shall occur within ten (10) days of a written request by either party for such session. If the ALPHA Fund and the Participant are unable to informally resolve the dispute, the dispute shall thereafter be subject to formal mediation in Sacramento County within sixty (60) days before an agreed mediator, with the ALPHA Fund and the Participant sharing equally in all of the costs of the mediation, but not including their own travel expenses or the fees of their respective attorneys or consultants.

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 20 of 34

b) If formal mediation fails to resolve the dispute, then either the ALPHA Fund or the Participant may thereafter file a legal action for declaratory relief and/or for damages in the Sacramento County Superior Court. The prevailing party in the legal action shall be awarded its reasonable attorney's fees and costs incurred after the formal mediation, including the reasonable fees of expert witnesses.

c) The dispute resolution procedures set forth in this section shall not replace or limit involuntary termination proceedings commenced by the ALPHA Fund under Section 4 of Article VI of this Agreement.

3. *Notices*. Any notices required by law or this Agreement shall be sufficient if given in writing and deposited in the United States Mail, postage prepaid, addressed to the Participant at the last address on file with ALPHA Fund. Notices to be given to ALPHA Fund shall be directed to such address as Coordinator shall designate for such purpose.

4. *Partial Invalidity*. If any one or more of the terms, provisions, promises, covenants, or conditions of ALPHA Fund shall to any extent be judged invalid, unenforceable, void or voidable for any reason whatsoever by a court of competent jurisdiction, each and all of the remaining terms, provisions, promises, covenants and conditions of ALPHA Fund shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

5. *Successors*. This agreement shall be binding upon and shall inure to the benefit of successors of the Participants.

6. *Assignment of Coordinator*. Coordinator expressly reserves the right to assign its interest in ALPHA Fund, including all powers, duties, and authority therein, to such entity as may be approved for such assignment by Governing Board. Such successor in interest may be for-profit or nonprofit corporation, or any other for-profit or nonprofit business entity; or may be a subsidiary for-profit or nonprofit corporation, wholly or partially owned by Coordinator, or any other subsidiary business entity owned and/or operated by Coordinator.

7. *Counterparts*. This Agreement may be executed in one or more counterparts, and shall be deemed effective as to all signatories as though signed in one document.

8. *Fiscal Year*. ALPHA Fund shall operate on a fiscal year commencing July 1 and ending on the following June 30.

Case: 12-12753   Doc# 91   Filed: 03/27/13   Entered: 03/27/13 14:38:17   Page 21 of 34

IN WITNESS WHEREOF,
the parties hereto have caused this
Agreement to be executed and attested by
their proper officers thereunto duly
authorized, and their official seals to be
affixed as of

```
┌ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┐
│                   │
│                   │
│                   │
  Affix Corporate Seal
│                   │
│                   │
└ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┘
```

_____, 20_____

_____
[Name of Entity]

By: _____
      Authorized Representative

**Association of California Healthcare
Districts, Inc.**

By: _____
      President, Association of California
      Healthcare Districts, Inc.

```
┌ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┐
│                   │
│                   │
│                   │
  Affix Corporate Seal
│                   │
│                   │
└ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┘
```

18

# Exhibit A

## ALPHA Fund Bylaws



# ALPHA FUND BYLAWS

### Amended as of March 16, 2007

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 24 of
34

# ALPHA FUND BYLAWS
## WORKERS' COMPENSATION SELF-INSURANCE PROGRAM
## FOR EMPLOYEES OF DISTRICT HOSPITALS
## AND OTHER LOCAL GOVERNMENT ENTITIES
## OF THE STATE OF CALIFORNIA

### PREAMBLE

This workers' compensation self-insurance program for employees of local government entities of the State of California, is an enlargement of the ALPHA Fund, a joint self-insurance pooling plan developed by the Association of California Healthcare Districts, Inc. It is operated for the purpose of providing the service, funds and other matters necessary and appropriate for the operation and maintenance of a program for administration of workers' compensation claims against local government entities which are Participants in the ALPHA Fund, and to provide a forum for discussion, study, development and implementation of recommendations of mutual interest regarding self-insurance for workers' compensation.

### ARTICLE I
### ADMINISTRATION

Section . <u>Definitions</u>. Unless otherwise defined in this Article I, the Definitions contained in the Joint Powers Agreement, (herein referred to as the "Agreement") to which these Bylaws are attached as an Exhibit, shall be applicable to these Bylaws:

"<u>Administrator</u>" shall mean the contractor, consultant, or other person or entity retained by the Association of California Healthcare Districts, Inc. to administer the ALPHA Fund.

"<u>ALPHA Council</u>" shall mean the body within the ALPHA Fund consisting of representatives of Participants, and charged with the responsibility of overseeing the ALPHA Fund, and as established by Coordinator pursuant to these Bylaws.

"<u>Brown Act</u>" shall mean Chapter 9 of Part 1 or Division 2 of Title 5 of the California Government Code known as the "Ralph M. Brown Act". Gov. Code §§ 54950 et seq.

"<u>Coordinator</u>" shall mean the Association of California Healthcare Districts, Inc. and/or any successor in interest or subsidiary entity formed by and so designated by the Association of California Healthcare Districts, Inc.

"<u>Council Member</u>" shall mean a person who has been appointed by the Governing Board of the ALPHA Fund to serve on the ALPHA Council pursuant to Article II of these Bylaws.

"<u>Governing Board</u>" shall mean the Board of Directors of the Association of California Healthcare Districts, Inc.

"<u>Meeting</u>" shall mean any congregation of a majority of the members of the ALPHA Council at the same time and place to hear, discuss, or deliberate upon any item that is within the jurisdiction of the ALPHA Council.

R:\ALPHA Fund\Joint Powers Agreement\2011\Final for 2011 with Amendments and JPA\ALPHA Fund JPA and Bylaws as of 5-2011.docx          07/27/11

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 25 of 34

Section 2.    Coordinator Authority and Delegation.    Coordinator shall have the authority necessary to carry out all functions of ALPHA Fund.  Coordinator may contract for the performance of financial administration, claim service, legal representation, safety engineering, actuarial and other duties and functions necessary for the payment and handling of all workers' compensation claims against Participants as required by law.

Section 3.    Claims Administration.    All workers' compensation claims filed pursuant to California law which arise from events occurring during the Participant's period of membership in ALPHA Fund shall be handled and paid pursuant to the Agreement entered into by the Participants and by these Bylaws.  ALPHA Fund shall not pay for or handle any workers' compensation claims for any Participant arising out of events occurring before or after that period of time during which such entity is a Participant in ALPHA Fund.

Section 4.    Annual Report.    As promptly as possible after receipt of the Report, Coordinator shall provide each Participant with an Annual Report, and such other reports as may be appropriate relating to the operations and financial condition of ALPHA Fund.

Section 5.    Expense of Coordinator.    Coordinator shall be paid in full for administrative and other services rendered by Coordinator.  Such payments of administrative cost shall be an expense of ALPHA Fund.  Coordinator shall also be paid a reasonable management fee the amount of which shall be agreed upon annually by Governing Board and ALPHA Council.

## ARTICLE II
## ALPHA COUNCIL

Section 1.    Authority.    The authority to operate ALPHA Fund is vested in Coordinator, but may be delegated to ALPHA Council according to the terms of these Bylaws and the Agreement.

Section 2.    Formation.    The ALPHA Council shall be activated and convened at such time as determined by the vote of the Governing Board and according to these Bylaws.

Section 3.    ALPHA Council Membership.

A.    The ALPHA Council shall consist of thirteen (13) persons appointed by Governing Board, each of whom must be a Director or Manager of a Participant.

B.    Upon the vote specified in Section 2 of this Article II, Coordinator shall notify all Participants.  Within sixty (60) days after the date of such notice each Participant may submit as candidates for the Council, the name of a Director, or the name of a Manager, or both to Coordinator, together with information outlining such person's qualifications to serve on the Council.  Nominees must be available to attend meetings of the Council and its Committees on a regular basis.  Within thirty (30) days after the expiration of the initial nominating period, the Governing Board shall appoint the initial members of the ALPHA Council.

C.    In making the initial appointments to the ALPHA Council, and thereafter, the Governing Board shall endeavor to provide the broadest possible representation by geographical location, size of Participant, type of Participant, and such other factors as may seem relevant.  No Participant shall be represented on ALPHA Council by more than one person.

3

4

D.     Membership of ALPHA Council shall be distributed as follows:

(1)     From nominees proposed by the Governing Board Chair, up to a maximum of four (4) members of the Governing Board who shall also be a Director or Manager of a Participant may be appointed by the Governing Board to serve on the Council. From nominees proposed by the ALPHA Council, the Governing Board shall appoint the remaining Members of the ALPHA Council, each of whom shall be a Director or Manager of a Participant that is not represented on the Governing Board. Of the remaining Members of the ALPHA Council appointed from Participants not represented on the Governing Board, four (4) of these Members shall be selected from the non-profit hospitals or non-profit healthcare corporations participating in the ALPHA Fund.

(2)     Not less than sixty (60) days prior to the ALPHA Fund Participants' Meeting each year, each Participant may submit the name of a Director and the name of Manager, or both, to the ALPHA Council as recommended nominees to fill vacancies on the Council. Each recommended nominee must be available to attend meetings of the Council and its Committees on a regular basis. From the list of recommended nominees so submitted, the Nominating Committee shall propose the nominees for appointment to the ALPHA Council. All appointments to the ALPHA Council shall be subject to confirmation at the next meeting of the Governing Board.

Section 4.    Alternate Representative For Council Member. If any duly appointed Council Member cannot attend a specific meeting of the ALPHA Council, the Council Member may designate an alternate representative for the purpose of attending and acting at the meeting. Any such alternate representative must be a Director, Manager or Assistant Manager of the same Participant as the absentee Council Member. If no alternate representative is appointed by the absentee Council Member, the ALPHA Council may appoint an alternate representative for purposes of attending and acting at said meeting. In such event, the ALPHA Council may select the alternate representative from the general population of Participants and/or from the Governing Board as provided by these Bylaws. An alternate representative designated to attend any meeting in the place of a Council Member, which Council Member is also an officer of the ALPHA Council or the Chair of any Committee, shall attend the meeting as a regular Council Member but the alternate representative shall not exercise any of the powers or duties of an officer or Committee Chair.

Council Members may designate an alternate representative for not more than two (2) meetings in any one fiscal year, provided, such alternate representative shall be of the same category, i.e., Directors shall substitute for Directors, Managers shall substitute for Managers, hospital district members for hospital district members, non-hospital district members for non-hospital district members.

Section 5.    Term of Office and Eligibility.

A.     The term of each Council Member shall be for three (3) years, except that the terms of the initial members shall be determined by lot, so that one-third (1/3) of the terms shall expire each year. A Council Member will be appointed to a three year term. Thereafter, the Council Member may be reappointed at the Board's discretion. Terms shall commence and end concurrently with the conclusion of the ALPHA Fund Participants' Meeting.

B.     With the approval of the Governing Board and ALPHA Council,

5

Case: 12-12753     Doc# 91     Filed: 03/27/13     Entered: 03/27/13 14:38:17     Page 28 of 34

any Council Member who is also a member of the Governing Board may complete his/her term on the ALPHA Council, after the Council Member's term on the Governing Board expires, if there is an open seat on the Council for which the Council Member is otherwise eligible.

  Section 6.    Council Member Vacancies.-

  A.    Any Council Member of ALPHA Council representing an entity which ceases to be a Participant, or any Council Member from a governmental entity whose term of office expires or terminates, or who ceases to be a Manager of a Participant, shall automatically cease to be a member of ALPHA Council, and that Member's position shall be filled by the Governing Board at its next Regular or Special Meeting.

  B.    A vacancy or opening on the ALPHA Council resulting from the approval of an increase in the number of Members of the ALPHA Council may be filled by the Governing Board at the same Regular or Special Meeting at which the increase in the number of Members of the ALPHA Council is approved.

  Section 7.    Removal.    Any Council Member of ALPHA Council may be removed from office at any time by a two-thirds (2/3) vote of the Governing Board if such Council Member ceases to have the qualifications required by these Bylaws, or for cause, such as inefficiency, failure to attend more than three (3) consecutive meetings of ALPHA Council or three (3) consecutive meetings of any Committee of ALPHA Council of which such person is a member, or any combination thereof.    Notification of removal shall be in writing.

  Section 8.    ALPHA Fund Administrator.    A representative of the ALPHA Fund Administrator shall attend all ALPHA Council and Committee Meetings.

ARTICLE III
MEETINGS

  Section 1.    Regular Meetings.    There shall be a minimum of three (3) Regular Meetings of ALPHA Council each year.    Such Meetings shall be held at the call of the Chair of ALPHA Council, at such times as may be recommended by the ALPHA Fund Administrator.

  Section 2.    Notice of Meetings.

  A.    Member Notice.    At least seven (7) days' notice of each ALPHA Council Meeting and each Committee Meeting shall be given to each Member, either personally, by e-mail, by facsimile, or by mail, postage prepaid, addressed to such member at the address appearing on the records of Coordinator.    Such notice shall contain the date, time, and place of the meeting, and to the extent possible, shall contain a specific description of the business to be transacted.

  B.    Public Notice by Mail.    The ALPHA Council shall give mailed notice of every Regular Meeting, and any Special Meeting which is called at least one week prior to the date set for the Meeting, to any person who has filed a written request for that notice with the ALPHA Council. Such mailed notice shall be mailed at least one week prior to the date set for

6

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 29 of 34

the Meeting to which it applies, except that the ALPHA Council may give the notice of a Special Meeting as provided in Section 4 of this Article III.

Any request for notice filed pursuant to this Section shall be valid for one (1) year from the date on which it is filed unless a renewal request is filed. Renewal requests for notice shall be filed within 90 days after January 1 of each year. The ALPHA Council may establish a reasonable annual fee for sending the notice based on the estimated cost of providing the service.

Section 3.    Place of Meeting.  No Meetings shall be held at any facility that prohibits the admittance of any person on the basis of race, religious creed, color, national origin, ancestry, or sex, or which is inaccessible to disabled persons, or where members of the public may not be present without making a payment or purchase.

Section 4.    Special Meetings.  A Special Meeting may be called at any time by the Chair of ALPHA Council, or by a majority of the Members of ALPHA Council, by delivering written notice to each Council Member and to each person requesting notice in writing. The notice shall be delivered either personally, by e-mail, by facsimile, or by mail and shall be received at least 24 hours before the time of the Meeting as specified in the notice. The notice shall specify the time and place of the Special Meeting and the business to be transacted or discussed. No other business shall be considered at the Special Meetings.  The written notice may be dispensed with as to any Council Member who is actually present at the Special Meeting at the time it convenes.  The call and notice shall be posted at least 24 hours prior to the Special Meeting in a location that is freely accessible to members of the public.

Section 5.    Action Without Meeting Prohibited.  Except for video teleconferencing conducted in accord with the provisions of the Brown Act, any use of direct communication, personal intermediaries, or technological devices such as telephones, e-mail or faxes that are employed by a majority of the members of the ALPHA Council or any Standing Committee of the Council to develop a collective concurrence as to action to be taken on an item within the jurisdiction of the ALPHA Council is prohibited.

Section 6.    Quorum.  Two-thirds (2/3) of the membership of the ALPHA Council shall constitute a quorum for the transaction of business at any meeting. A majority of the voting members of any Standing Committee or Ad Hoc Committee shall constitute a quorum for the transaction of the business of that Committee.

Section 7.    Participation in Meetings.  Coordinator, or any representative of a Participant, shall be entitled to make recommendations in writing to the ALPHA Council or any Committee with respect to any matter at any meeting thereof.  Except as provided in Article II, Section 4, any person designated as a representative of a Participant shall have the right to attend any meeting of the ALPHA Council or any Committee thereof as an observer, but shall not participate in the discussion unless invited, and shall have no power to vote.

Section 8.    Open Meetings.  All meetings of the Governing Board, and the ALPHA Council and its Committees shall be open and public, and all persons shall be permitted to attend any meeting except as otherwise provided in the Brown Act.

Section 9.    Closed Sessions Permitted.  Notwithstanding any other Section of these Bylaws, the Council Members may conduct business, including business related to personnel matters, real estate negotiations and to threatened and current litigation, during closed sessions as provided by the Brown Act.  The ALPHA Council shall publicly report any action taken in

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 30 of 34

closed session and the vote or abstention of every Council Member present therein, in accord with requirements of the Brown Act.

Section 10.    Minutes.  Minutes shall be kept of all meetings of the Governing Board, and the ALPHA Council and its Committees.

Section 11.    Fees and Compensation.  Members of ALPHA Council and all ALPHA Council Committees shall receive a per diem fee, and shall be reimbursed for all necessary out-of-pocket costs.  The amount of such fees and the rate of reimbursement shall be determined from time to time by the ALPHA Council and shall be an expense of ALPHA Fund.

ARTICLE IV
OFFICERS

Section 1.    Titles.  The officers of the ALPHA Council shall be Chair, Vice Chair, and Secretary and Treasurer.  The Council may appoint such other officers for such terms of office as may, in the Council's judgment, be necessary

Section 2.    Eligibility and Election.  At the first Regular Meeting of the ALPHA Council after the Annual Meeting of Coordinator, the Council shall elect a Chair, Vice Chair, Secretary, and Treasurer.  The officers so elected shall take office at the conclusion of the Meeting at which they are elected.  Each officer shall be elected for a term of one (1) year, and shall serve until a successor is elected.  An officer of the ALPHA Council may be elected to two (2) or more successive terms.

Section 3.    Chair of the ALPHA Council.  The Chair of the ALPHA Council shall preside at all meetings of the Council, and shall perform such other duties and exercise such powers as may be prescribed by the Council.  The Chair shall have one vote, shall be responsible to the Council, and shall perform all duties and exercise all powers pursuant to policies and directions of the Council.

Section 4.    Vice Chair of the ALPHA Council.  In the absence or disability of the Chair, the Vice Chair shall perform all the duties of the Chair and, when so acting, shall have all the powers of, and be subject to all the restrictions upon, the Chair.  The Vice Chair shall have such other powers and perform such other duties as the Council may prescribe from time to time.

Section 5.    Secretary of the ALPHA Council.  The Secretary shall keep, or cause to be kept, a book of minutes of all Meetings of the Council and its Committees.  The Secretary shall keep, or cause to be kept, the original copies of the Joint Powers Agreement and Bylaws, as amended to date, and a register showing the names of all Council Members and their respective addresses.  The Secretary shall give, or cause to be given, notice of all Meetings of the Council and its Committees thereof required by these Bylaws or by law to be given; and shall see that all reports, statements and other documents required by law are properly kept or filed.

Section 6.    Treasurer of the ALPHA Council.  The Treasurer, through the Coordinator, shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the ALPHA Fund, including accounts of its assets, liabilities, receipts and disbursements.  The Treasurer shall have such

8

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 31 of 34

other powers and perform such other duties as may be prescribed from time to time by the Council.

Section 7.     Officer Vacancies.  If any office shall become vacant, it shall be filled by the Council at the next Regular or Special Meeting.  Any officer succeeding to or elected to fill a vacant office shall serve the remainder of the predecessor's term.

## ARTICLE V
## COMMITTEES

Section 1.     Standing and Ad Hoc Committees.  The ALPHA Council may constitute such Standing Committees and Ad Hoc Committees from its membership as may prove necessary.  Any Standing Committees shall remain in existence until dissolved by the ALPHA Council.  Ad Hoc Committees shall automatically be dissolved upon completion of their assignments.

The general duties and responsibilities of each Standing Committee shall be prescribed by these Bylaws. The size and composition of the Standing Committees and any Ad Hoc Committees shall be established by the Council.  Each Standing Committee shall review, study and make recommendations to the ALPHA Council on all matters within its jurisdiction. The ALPHA Council and the Committees may communicate and conduct business according to policies established by the Council.

Except as otherwise provided in this Article, the Chair of the ALPHA Council, subject to the approval of the Council, shall appoint Standing Committee members to carry on the business of the Council.  The Chair shall appoint the members of the Standing Committees within ninety (90) days of the Annual Meeting of the Coordinator. The Chair shall be an ex-officio member of each Standing Committee and may vote on any action taken by the Committee.

There shall be three (3) Standing Committees:

A.     Executive Committee;

B.     Human Resources Committee;

C.     Finance Committee.

Section 2.     Executive Committee.

A.     There shall be an Executive Committee consisting of the Chair, the Vice Chair, Secretary and Treasurer of the ALPHA Council.  The ALPHA Fund Administrator shall be an ex-officio, non-voting member of the Executive Committee.  Two (2) voting members of the Executive Committee shall constitute a quorum.

B.     The Executive Committee shall have and may exercise the powers and authority of the Council subject to any prior limitation imposed by law, the Council, or these Bylaws, when action is necessary due to the urgency or sensitivity of the item to be discussed.

C.     The Executive Committee shall report its activities to the Council, and shall be subject at all times to the control of the Council, which shall have the power to revise or alter any action taken by the Committee, provided, however, that no rights of third parties shall be affected thereby.  The Executive Committee shall meet as required to carry out its

9

Case: 12-12753     Doc# 91     Filed: 03/27/13     Entered: 03/27/13 14:38:17     Page 32 of 34

duties and functions.  In addition, the Committee may meet upon call of the Chair, or in his/her absence, the Vice Chair.

Section 3.    Human Resources Committee.

A.    The Human Resources Committee shall meet at such times as determined by the Committee Chair and shall exercise the functions and powers set forth herein and as delegated to it by the ALPHA Council from time to time.  The Council shall determine the size and composition of the Human Resources Committee.  The Human Resources Committee may include representatives of Participants, with knowledge and experience in Human Resources issues, who are not Members of the ALPHA Council.

B.    The primary responsibilities of the Human Resources Committee as representatives of the Participants shall be to:

(1)    Provide oversight for the Claims Administration functions of the ALPHA Fund and to make recommendations to the Council regarding Claims Administration objectives, operations and performance.

(2)    Provide oversight for the Loss Prevention / Control functions of the ALPHA Fund and to make recommendations to the Council regarding Loss Prevention / Control objectives, budgeting, operations and performance.

Section 4.    Finance Committee.

A.    The Finance Committee shall meet at such times as determined by the Committee Chair and shall exercise the functions and powers as set forth herein and as delegated to it by the Council from time to time.

B.    The primary responsibilities of the Finance Committee shall be:

(1)    Advise the Council on appropriate financial, investment and contracting policies and procedures of ALPHA Fund and report to the Council from time to time on the adequacy of such policies and procedures;

(2)    Oversee the prioritization of the ALPHA Fund's annual budget and advise the Council, as appropriate;

(3)    Review and approve unbudgeted programs, activities and expenditures of ALPHA Fund with a significant fiscal impact; and

(4)    At least once each quarter, review the budget, financial and investment performance of the ALPHA Fund and, as appropriate, advise the Council on any corrections that may be needed.

C.    Until the ALPHA Council, with the approval of the Governing Board, appoints a Finance Committee comprised of its own Council Members, the Finance Committee of the Board of Directors of the Coordinator shall serve as the Finance Committee for the ALPHA Fund and the ALPHA Council.

ARTICLE VI

Case: 12-12753    Doc# 91    Filed: 03/27/13    Entered: 03/27/13 14:38:17    Page 33 of 34

## AMENDMENT AND EFFECTIVE DATE

Section 1.    <u>Amendment</u>.  Amendments to these Bylaws may be proposed by the Governing Board, the ALPHA Council, or any Participant.  Every amendment must be approved by a majority vote of the ALPHA Council and by a majority vote of the Governing Board.

No amendments shall increase the duties or liabilities of either the Coordinator, ALPHA Council, or Administrator without the written consent of the affected party or parties.

Any amendment so approved shall become effective on the July 1 next following adoption as prescribed above, unless a sooner effective date is specified in the amendment.

Section 2.    <u>Effective Date</u>.  These Bylaws shall become effective concurrently with the effective date of the Joint Powers Agreement.