LAW OFFICES OF
**GLASS & GOLDBERG**
A LAW CORPORATION

21700 OXNARD STREET, SUITE 430
WOODLAND HILLS, CALIFORNIA 91367-3665
TELEPHONE (818) 888-2220
TELECOPIER (818) 888-2229

State Bar No. 89677

Attorneys for Movant DE LAGE LANDEN

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA-SANTA ROSA

| | |
|---|---|
| In re:<br><br>MENDOCINO COAST HEALTH CARE DISTRICT<br><br>Debtor. | CASE NO: 12-12753<br><br>CHAPTER 9<br><br>MOTION FOR ORDER FIXING TIME FOR ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT AND FOR PERFORMANCE OF ALL OBLIGATIONS REQUIRED UNDER THE LEASE OR REJECTION OF LEASE;<br><br>DATE: May 24, 2013<br>TIME: 9:00 a.m.<br>PLACE: 99 S. E. Street<br>Santa Rosa, CA 95404<br>Judge: Hon. Alan Jaroslovsky |

Movant DE LAGE LANDEN FINANCIAL SERVICES, INC. ("Movant") hereby moves the court for an order, pursuant to Section 365(d)(5) of the Bankruptcy Code, Rules 6006(b) and (c) of the Federal Rules of Bankruptcy Procedure and Rule 9014-1 of the Bankruptcy Local Rules for the Northern District of California, , fixing a date by which Debtor MENDOCINO COAST HEALTH CARE DISTRICT debtor in the above-captioned Chapter 9 case ("Debtor") must either assume or reject its commercial equipment leases with the Movant, and cure all arrearages owed and all defaults under the lease schedules at issue in the event it elects to assume these lease schedules.

# I
## STATEMENT OF FACTS

MENDOCINO COAST HEALTH CARE DISTRICT ("Debtor") filed its Chapter 9 bankruptcy petition on October 17, 2012 ("Petition Date"). As of the petition date, the Debtor was in default for the October, 2012 payment under certain equipment lease schedules (as defined herein) the Debtor has with DE LAGE LANDEN FINANCIAL SERVICES, INC. ("Movant"). Since the Petition Date of October 17, 2012, four monthly Lease payments have come due and only two have been paid. These missed payments have enabled the Debtor to use Movant's equipment for free for several months and as a source of funds for the Debtor's Plan of Reorganization to be filed. To prevent the Debtor from violating 11 U.S.C. § 365(d)(5), the Debtor must make timely payments on the Lease immediately in a Chapter 9 proceeding and starting 60 days after the petition date in a Chapter 11 proceeding. Since the Debtor has failed to make one pre-petition payment and two post petition payments, Movant has brought this Motion for Order Fixing Time For Assumption or Rejection of Executory Contract and for Performance of All Obligations Required Under the Lease Agreement or Rejection of Lease ("Motion").

### Master Lease Agreement

On or about July 26, 2010, Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc. ("TAMC") entered into a Master Lease Agreement ("MLA") with the Debtor. The MLA provides for separate schedules of equipment to be leased under the Master Lease Agreement between TAMC, the lessor, and the Debtor, the lessee. A true and correct copy of the Master Lease is attached to the Declaration of Cheryl Glick ("Glick Declaration"), filed concurrently herewith, marked as Exhibit "1", and incorporated herein by reference

### Master Lease Schedule No 01

On or about July 11, 2010, TAMC and the Debtor entered into Master Lease Schedule- No. 01-FMV Option, Lease No. 25118161 ("Schedule No. 01") to the Master Lease to lease certain medical equipment to the Debtor to be used in the Debtor's business ("Equipment No. 1"). A true and correct copy of Schedule No. 01, and its accompanying documents, is attached to the Glick Declaration, marked as Exhibit "2, and incorporated herein by reference. The Schedule provided,

*inter alia*, that the Debtor make 60 monthly payments according to the terms of the Schedule, plus sales tax, plus any fees, licenses, taxes, and expenses that the Debtor incurred during the 60 months. On July 26, 2012, the Debtor executed a Co-Terminus Addendum, wherein the monthly payments were modified. A true and correct copy of the Co-Terminus Addendum is attached to the Glick Declaration filed concurrently herewith as part of Exhibit "2", and incorporated herein by reference.

The Schedule contains a Fair Market Value Lease End Option. Paragraph 8 states in pertinent part:

> Provided no Event of Default shall have occurred and remain uncured, Lessee may upon the expiration of the Lease Term exercise any one of the following options with respect to not less than all items of Equipment leased hereunder, (i) return the Equipment to Lessor, (ii) extend the Lease Term at the then fair rental value ("Fair Rental Value") for an extension term the length of which shall be determined by agreement between Lessee and Lessor or (iii) purchase the Equipment for cash at the Equipment's then fair market value ("Fair Markel Value")…
>
> Fair Market Value and Fair Rental Value shall mean an amount which would obtain in a transaction between an informed and willing buyer/lessee (other than a dealer) and an informed and willing seller/lessor (assuming for this purpose that the Equipment shall have been maintained in accordance with this Lease and taking into consideration the in-place value of the Equipment to Lessee) and will be determined by agreement between Lessor and Lessee.

Also attached as part of Exhibit 2, is the Master Lease Schedule No. 01 Addendum, which reads as follows in paragraph 2

> 2. The following is also added to Section 9. Additional Provisions: "The Fair Market Value as defined in Section 8, Lease End Option shall not exceed $219,055.80, plus any applicable taxes."

### Master Lease Schedule No 02

On or about June 30, 2011, TAMC and the Debtor entered into Master Lease Schedule- No. 02-FMV Option, Lease No. 25113914 ("Schedule No. 02") to the MLA to lease certain medical equipment to the Debtor to be used in the Debtor's business ("Equipment No. 2"). A true and correct copy of Schedule 02, and its accompanying documents, is attached to the Glick Declaration, filed concurrently herewith as Exhibit "3", and incorporated herein by reference. The Schedule provided, *inter alia*, that the Debtor make 60 monthly payments according to the terms of the schedule, plus sales tax, plus any fees, licenses, taxes, and expenses that the Debtor incurred during the 60 months.

The Schedule contains the same Fair Market Value Lease End Option in paragraph 8 as in Schedule 01. Also attached as part of Exhibit 3, is the Master Lease Schedule No. 02 Addendum, which reads as follows in paragraph 2

> 2. The following is also added to Section 9. Additional Provisions: "The Fair Market Value as defined in Section 8, Lease End Option shall not exceed $125,938.20, plus any applicable taxes."

### Master Lease Schedule No 03

On or about July 27, 2011, TAMC and the Debtor entered into Master Lease Schedule- No. 03-FMV Option Lease No. 25118183 ("Schedule No. 03") to the MLA to lease certain medical equipment to the Debtor to be used in the Debtor's business ("Equipment No. 3"). A true and correct copy of Schedule 03, and its accompanying documents, is attached to the Glick Declaration filed concurrently herewith as Exhibit "4", and incorporated herein by reference. The Schedule provided, *inter alia*, that the Debtor make 60 monthly payments according to the terms of the schedule, plus sales tax, plus any fees, licenses, taxes, and expenses that the Debtor incurred during the 60 months.

The Schedule contains the same Fair Market Value Lease End Option in paragraph 8 as in Schedule 01. Also attached as part of Exhibit 4, is the Master Lease Schedule No. 02 Addendum, which reads as follows in paragraph 2

> 2. The following is also added to Section 9. Additional Provisions: "The Fair Market Value as defined in Section 8, Lease End Option shall not exceed $94,574.40.20, plus any applicable taxes."

### Master Lease Schedule No 04

On or about June 30, 2011, TAMC and the Debtor entered into Master Lease Schedule- No. 04-FMV Option Lease No. 25113932 ("Schedule No. 04") to the MLA to lease certain medical equipment to the Debtor to be used in the Debtor's business ("Equipment No. 4"). A true and correct copy of Schedule 04, and its accompanying documents, is attached to the Glick Declaration filed concurrently herewith as Exhibit "5", and incorporated herein by reference. The Schedule provided, *inter alia*, that the Debtor make 60 monthly payments according to the terms of the schedule, plus sales tax, plus any fees, licenses, taxes, and expenses that the Debtor incurred during the 60 months.

The Schedule contains the same Fair Market Value Lease End Option in paragraph 8 as in Schedule 01. Also attached as part of Exhibit 5, is the Master Lease Schedule No. 02 Addendum, which reads as follows in paragraph 2

> 2. The following is also added to Section 9. Additional Provisions: "The Fair Market Value as defined in Section 8, Lease End Option shall not exceed $75,995.25, plus any applicable taxes."

### UCC Financing Statements

TAMC filed UCC Financing Statements with the California Secretary of State out of an abundance of caution to preserve its rights in the equipment leased under the Master Lease and each of the Schedules 01-04, in the event that the MLA and its schedules were found to be secured financing instead of a true lease. True and correct copies of the UCC-1 Financing Statements are attached to the Glick Declaration, filed concurrently herewith, as Exhibit "6", and incorporated herein by reference. Each of the Financing Statements includes the following language in box 4: "THIS FILING IS FOR PRECAUTIONARY PURPOSES IN CONNECTION WITH AN EQUIPMENT LEASE TRANSACTION AND IS NOT TO BE CONSTRUED AS INDICATING THAT THE TRANSACTION IS OTHER THAN A TRUE LEASE".

### Assignment

On or about July 27, 2011, TAMC assigned, transferred, and conveyed all of its right, title and interest in and to the MLA, Schedule No. 01, Schedule No. 02, Schedule No. 03, Schedule No. 04, and accompanying documents, including the Co-Terminus Addendum, to Movant and Movant acquired all of the right, title and interest of TAMC in and to the MLA, Schedule No. 01, Schedule No. 02, Schedule No. 03, Schedule No. 04, and all accompanying documents, and Movant has accepted such assignment. True and correct copies of the Confirmations of Assignment are attached collectively to the Glick Declaration filed concurrently herewith as Exhibit "7", and incorporated herein by reference.

### The Terms Of The Lease Schedules

The Movant has a "meaningful residual interest" in the Equipment ("Equipment') under each of the Schedules at the end of the terms (Master Lease , Exhibit "1", ¶8 – Equipment is returned at the

end of the Lease; Schedule, 01-04, ¶8 Purchase Option is based on fair market rental value of the Equipment (Glick Decl. ¶ , Exh.1-4)

### Default

Movant's records reflect that regarding the four schedules to the MLA, Movant has failed to make one pre-petition payment and two post petition payments. The Debtor has not agreed to assume the Lease with the Movant and is not making timely payments against the Schedules on a Post-Petition basis.

Pursuant to the terms of the MLA and Schedules 1-4, Movant has declared the entire unpaid balance due under the MLA and Schedules 1-4 as follows:

| 25118161 | Schedule 1 | $1,082,231.66 |
| 25113914 | Schedule 2 | $575,256.15 |
| 25118183 | Schedule 3 | $461,703.17 |
| 25113932 | Schedule 4 | $363,721.59 |
| | **TOTAL** | **$2,482,912.57** |

For each account, Movant maintains a Balance Due Summary. Attached to the Glick Declaration filed concurrently herewith as Exhibit "8", is a true and correct copy of the Ledger for Schedules 01-04.

### The Terms Of The Lease Schedules

The Movant has a "meaningful residual interest" in the Equipment ("Equipment") under each of the Schedules at the end of the terms (Master Lease , Exhibit "1", ¶8 – Equipment is returned at the end of the Lease; Schedule, 01-04, ¶8 Purchase Option is based on fair market rental value of the Equipment ( ¶ , Exh.1-4 of Glick Declaration)

Movant's booked residual on each of the items of equipment is based upon an anticipated residual that is well in excess of recognized standards for a fair market value end of term lease value. Furthermore, as set forth above each of the Addenda sets out the maximum amount to be charged for the fair market value, which is substantially in excess of the recognize values for fair market values.

| Lease No. | Equipment Piece | Invoice Amt | Booked Residual w/o Sales Tax | Booked Residual Percentage | Addendum Amt | Addendum Amt Percentage |
|---|---|---|---|---|---|---|
| 25118183 | DR Systm | $497,760 | $74,600.00 | 15% | $94,574.40 | 19% |
| 25113914 | CT | $629,691 | $100,750.56 | 16% | $125,938.20 | 20% |
| 25118161 | MRI | $1,095,279 | $175,241.00 | 16% | $219,055.80 | 20% |
| 25113932 | Randrex | $399,975 | $59,996.25 | 15% | $75,995.25 | 19% |

Attached collectively as Exhibit "9" to the Glick Declaration are the set of Invoices for each of the pieces of Equipment to support the above numbers.

## IV
## CONCLUSION

For the reasons set forth in the Memorandum of Points and Authorities filed concurrently herewith, Movant respectfully requests that the Court set a deadline by which the Debtor must assume the Lease, or surrender possession of the leased Equipment, and further order the Debtor to immediately commence making the monthly Lease payments owed to Movant under the Lease on a timely basis, as well as pay all accrued post-petition payments.

DATED: April 16, 2013     GLASS & GOLDBERG

By: / S / MARSHALL F. GOLDBERG
Attorneys for Movant